IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

VIOLETA ESCOBAR, also known as )   Civ. No. 13-00598 HG-RLP
VIOLETA ESCOBAR CLINE, )
Individually and as Personal )
Representative for the ESTATE )
OF NATHAN CLINE, Deceased, )
                      )
           Plaintiff, )
                      )
      vs. )
                      )
NEVADA HELICOPTER LEASING LLC; )
AIRBUS HELICOPTERS SAS, )
formerly known as Eurocopter )
Deutschland GmbH and )
Eurocopter, S.A.S., )
                      )
           Defendants. )
                      )
_____ )
_ )
                      )
NEVADA HELICOPTER LEASING LLC, )
                      )
           Cross-Claimant, )
                      )
      vs. )
                      )
AIRBUS HELICOPTERS SAS, )
formerly known as Eurocopter )
Deutschland GmbH and )
Eurocopter, S.A.S., )
                      )
           Cross- )
           Defendant. )
                      )
_____ )
_ )
                      )
NEVADA HELICOPTER LEASING LLC, )
                      )

1

```
                    Third-Party      )
                    Plaintiff,       )
                                     )
            vs.                      )
                                     )
AIRBUS HELICOPTERS, INC.,            )
formerly known as American           )
Eurocopter Corporation,              )
                                     )
                    Third-Party      
                    Defendant.       
_____
```

_

**ORDER GRANTING DEFENDANT NEVADA HELICOPTER LEASING LLC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 127)**

On November 10, 2011, a 2010 Eurocopter France model EC130 B4 helicopter, which was piloted by Nathan Cline, crashed on the island of Molokai.  Cline and the four passengers onboard the helicopter died as a result of the crash.

Plaintiff Violeta Escobar, the widow of Nathan Cline, has filed a First Amended Complaint against Airbus Helicopters SAS, and Nevada Helicopter Leasing LLC, on behalf of herself and as personal representative for the Estate of Nathan Cline.

Plaintiff's Complaint asserts state law claims for negligence and strict products liability against both Defendant Airbus Helicopters SAS, the manufacturer of the helicopter, and Defendant Nevada Helicopter Leasing LLC, the owner of the helicopter.

Defendant Nevada Helicopter Leasing LLC owned the helicopter at issue and leased it to Maui Helicopter Consultants, doing business as Blue Hawaiian Helicopters.

Blue Hawaiian Helicopters was the employer of Nathan Cline.  Blue Hawaiian Helicopters is not a party to the lawsuit.

Defendant Nevada Helicopter Leasing LLC has filed a Motion for Summary Judgment asserting that Plaintiff's state law causes of action are preempted by federal law.  Defendant Nevada Helicopter Leasing LLC argues that pursuant to preemptive federal law, it is immune from liability because it did not have actual possession or control of the helicopter, but merely leased it to Blue Hawaiian Helicopters.

Defendant Nevada Helicopter Leasing LLC's Motion for Summary Judgment (ECF No. 127) is **GRANTED**.

## THE PARTIES

**Airbus Group, S.E.,**[1] is a parent company that coordinates a number of business involving aviation and is headquartered in the Netherlands.  Airbus Group, S.E. was never served with the First Amended Complaint and was dismissed from the case.

---

[1] Airbus Group, S.E. is formerly known as European Aeronautic Defence and Space Company (EADS, N.V), and Airbus Group, N.V.

**Defendant Airbus Helicopters SAS**[2] is primarily owned by Airbus Group, S.E., and is responsible for manufacturing of its helicopters.  Defendant Airbus Helicopters SAS has its principal place of business in France.

Defendant Airbus Helicopters SAS designed, manufactured, and tested the EC130 B4 model helicopter at issue in this case.  (Defendant Airbus Helicopters SAS's Answer at ¶¶ 14-15, ECF No. 60).  Defendant Airbus Helicopters SAS sold the helicopter at issue in this case to Airbus Helicopters, Inc. in early 2010.  (Id. at ¶¶ 15-16; Airbus Helicopters, Inc.'s Answer at ¶ 9-10, ECF No. 63).

**Third-Party Defendant Airbus Helicopters, Inc.**[3] is a Delaware corporation with two industrial sites in the United States and its principal place of business in Texas.  Airbus Helicopters, Inc. is wholly-owned by Airbus Group, Inc., which is a subsidiary of Airbus Group, S.E.  (Airbus Helicopters Inc.'s Corporate Disclosure Statement, ECF No. 65).

---

[2] Airbus Helicopters SAS is formerly known as Eurocopter, S.A.S., and as Eurocopter Deutschland GmbH.

[3] Airbus Helicopters, Inc. is formerly known as American Eurocopter Corporation.

Airbus Helicopters, Inc., in this instance, is the entity responsible for the sale and distribution of Airbus helicopters in the United States.  Airbus Helicopters, Inc. bought the EC130 B4 helicopter at issue in this case from Airbus Helicopters SAS in early 2010.  (Airbus Helicopters, Inc.'s Answer at ¶ 10, ECF No. 63).  On or about March 29, 2010, Airbus Helicopters, Inc. sold the EC130 B4 helicopter to Nevada Leasing LLC.  (Id. at ¶ 11; Nevada Helicopter Leasing LLC's Answer at ¶ 9, ECF No. 39).

**Defendant Nevada Helicopter Leasing LLC ("Nevada Leasing")** is a limited liability company registered in the State of Nevada.  Nevada Leasing is wholly owned by Blue Hawaiian Holdings, LLC.  (Nevada Leasing's Corporate Disclosure Statement, ECF No. 29).

Nevada Leasing was formed to take advantage of federal and state tax incentives for entities established to purchase and lease aircrafts.  (Woods Aff. at ¶¶ 7, 9, ECF No. 128-2; Chevalier Depo. at p. 49, attached as Ex. 5 to Pla.'s CSF, ECF No. 142-7).

On or about March 29, 2010, Nevada Leasing purchased the EC130 B4 helicopter at issue in this case from Airbus Helicopters, Inc.  (Airbus Helicopters, Inc.'s Answer at ¶ 11,

ECF No. 63;  Nevada Leasing's Answer at ¶ 9, ECF No. 39).
Nevada Leasing leased the helicopter at issue to Helicopter
Consultants of Maui, Inc., doing business as Blue Hawaiian
Helicopters.

**Helicopter Consultants of Maui, Inc. doing business as
Blue Hawaiian Helicopters ("Blue Hawaiian")** is a business
licensed in the State of Hawaii to conduct helicopter tour
operations.  Blue Hawaiian leased the helicopter at issue from
Nevada Leasing pursuant to a long-term lease agreement.

Blue Hawaiian employed Nathan Cline as a commercial
helicopter pilot to conduct helicopters tours of Hawaii.

On November 10, 2011, Nathan Cline was fatally injured
when he piloted the EC130 B4 helicopter at issue when it
crashed in mountainous terrain on the island of Molokai.

**Plaintiff Violeta Escobar**, also known as Violeta Escobar
Cline, is the widow of Nathan Cline. She has filed suit on
behalf of herself individually and as the personal
representative for the estate of Nathan Cline.

<u>**PROCEDURAL HISTORY**</u>

On November 6, 2013, Plaintiff filed a Complaint.  (ECF No. 1).

On July 17, 2015, Plaintiff filed a FIRST AMENDED COMPLAINT against three entities:

(1)  Airbus Group, S.E., the parent company;

(2)  Airbus Helicopters SAS, the manufacturer of the helicopter; and

(3)  Nevada Helicopter Leasing LLC, the owner and lessor of the helicopter at issue.

(ECF No. 32).

On October 27, 2015, Nevada Helicopter Leasing LLC filed a THIRD PARTY COMPLAINT against Airbus Helicopters, Inc., the seller of the helicopter.  (ECF No. 56).

On November 10, 2015, Nevada Helicopter Leasing LLC filed a CROSSCLAIM against the co-defendant Airbus Helicopters SAS, the helicopter manufacturer.  (ECF No. 68).

On March 10, 2016, Plaintiff filed a NOTICE OF DISMISSAL as to her claims against Airbus Group, S.E., the parent company headquartered in the Netherlands, who was never served with the First Amended Complaint.  (ECF No. 103).

Plaintiff's First Amended Complaint remained against Defendant Airbus Helicopters SAS, the helicopter manufacturer, and Defendant Nevada Helicopter Leasing LLC, the owner/lessor of the helicopter.

On April 29, 2016, Defendant Nevada Helicopter Leasing LLC filed a MOTION FOR SUMMARY JUDGMENT against Plaintiff along with a CONCISE STATEMENT OF FACTS.  (ECF Nos. 127, 128).

On May 12, 2016, Plaintiff requested an extension of time to file her Opposition to Defendant Nevada Helicopter Leasing LLC's Motion for Summary Judgment.  (ECF No. 131).

On the same date, the Court issued a Minute Order granting Plaintiff's request for an extension of time and also provided Defendant Nevada Helicopter Leasing LLC with an extension of time to file its Reply.  (ECF No. 132).

On May 23, 2016, Plaintiff filed her Memorandum in Opposition and Plaintiff's Concise Statement of Material Facts in Opposition.  (ECF Nos. 136, 137).

On May 25, 2016, Plaintiff filed her Corrected Memorandum in Opposition and her Concise Statement of Material Facts in Opposition.  (ECF Nos. 142, 143).  Plaintiff withdrew her incorrectly filed submissions.  (ECF No. 147).

Also on May 25, 2016, both Defendant Airbus Helicopters SAS and Third-Party Defendant Airbus Helicopters, Inc. filed a STATEMENT OF NO POSITION as to Nevada Helicopter Leasing LLC's Motion for Summary Judgment.  (ECF No. 141).

On June 6, 2016, Defendant Nevada Helicopter Leasing LLC filed its REPLY.  (ECF No. 149).

8

On June 20, 2016, the Court held a hearing on Defendant Nevada Helicopter Leasing LLC's Motion for Summary Judgment.

## BACKGROUND

On April 2, 2001, Defendant Nevada Helicopter Leasing LLC ("**Nevada Leasing**") was formed by its original two Members and Managers David J. Chevalier and David B. Griffin as a limited liability company in the State of Nevada.  (Affidavit of R. Glen Woods ("Woods Aff.") at ¶¶ 1-4, attached as Ex. 1 to Def.'s Concise Statement of Fact ("CSF"), ECF No. 128-2).

David J. Chevalier was the majority owner of Defendant Nevada Leasing and David B. Griffin was the minority owner. (Operating Agreement for Nevada Leasing, attached as Ex. 2 to Pla.'s CSF, ECF No. 142-4).

Defendant Nevada Leasing did not have any employees. (Woods Aff. at ¶ 10, ECF No. 128-2).

Defendant Nevada Leasing purchased helicopters that were leased to Helicopter Consultants of Maui, Inc., doing business as Blue Hawaiian Helicopters ("**Blue Hawaiian**").  (Woods Aff. at ¶ 8, ECF No. 128-2; see Checks from Nevada Leasing to American Eurocopters, attached as Ex. 19 to Pla.'s CSF, ECF No. 142-21).

David J. Chevalier, the majority owner of Defendant Nevada Leasing, was also a majority owner of Blue Hawaiian and served as Blue Hawaiian's Chief Executive Officer. (Deposition of David. J. Chevalier ("Chevalier Depo.") at p. 53, attached as Ex. 5 to Pla.'s CSF, ECF No. 142-7).

David B. Griffin, the minority owner of Defendant Nevada Leasing, owned the remaining percentages of Blue Hawaiian and served as Blue Hawaiian's Chief Operating Officer.  (Id.)

On March 17, 2010, Defendant Nevada Leasing purchased the Subject Helicopter, a Eurocopter EC 130 B4 with Serial Number 4909 and Federal Aviation Administration Registration No. N11QV ("Subject Helicopter") from Third-Party Defendant Airbus Helicopters, Inc., formerly known as American Eurocopter Corporation.  (Invoice Number 88101401 from American Eurocopter Corporation to Nevada Helicopter dated March 17, 2010, attached as Ex. 4 to Def.'s CSF, ECF No. 128-5).

Defendant Nevada Leasing was listed as the registered owner of the Subject Helicopter on the Federal Aviation Administration Registration Certificate.  (Federal Aviation Administration Certification issued on April 16, 2010, for Eurocopter EC130B4 with Registration Number 11QV, attached as Ex. 3 to Def.'s CSF, ECF No. 128-4).

Defendant Nevada Leasing leased the Subject Helicopter to Blue Hawaiian pursuant to a Master Helicopter Lease Agreement with an effective date of March 29, 2010, and an expiration date of March 29, 2015.  (Master Helicopter Lease Agreement and Master Lease Schedule, attached as Ex. 5 to Def.'s CSF, ECF No. 128-6).  The Master Lease Agreement was Amended on June 1, 2011 with an effective date of June 1, 2011 and an expiration date of June 1, 2016.  (Amended and Restated Master Helicopter Lease Agreement, attached as Ex. 6 to Def.'s CSF, ECF No. 128-7).

The Lease Agreement contained a provision stating that the Subject Helicopter "will at all times be and remain in the possession and control of" Blue Hawaiian.  (<u>Id.</u> at ¶ 10, ECF No. 128-7).

The Lease Agreement also provided that Blue Hawaiian would be responsible for all maintenance, repairs, and inspections for the Subject Helicopter.  (<u>Id.</u> at ¶ 11).

David J. Chevalier and David B. Griffin owned both Defendant Nevada Leasing and Blue Hawaiian at the time of the Master and Amended Master Lease Agreements.  (Master Helicopter Lease Agreement at p. 1, ¶ E., ECF No. 128-6; Amended and Restated Mater Helicopter Lease Agreement at p. 1, ¶ F., attached as Ex. 6 to Def.'s CSF, ECF No. 128-7).

11

Nevada Leasing was formed to take advantage of federal and state tax incentives for entities established to purchase and lease aircrafts. (Woods Aff. at ¶¶ 7, 9, ECF No. 128-2; Chevalier Depo. at p. 49, attached as Ex. 5 to Pla.'s CSF, ECF No. 142-7).

Nathan Cline was a commercial helicopter pilot and was hired by Blue Hawaiian on July 1, 2011. (National Transportation Safety Board Factual Report Aviation,, NTSB ID: WPR12MA034, attached as Ex. 8 to Def.'s CSF at p. 1a, ECF No. 128-9).

Approximately four months later, on the morning of November 10, 2011, Cline piloted the Subject Helicopter. (Id. at p. 1). The Subject Helicopter departed from Kahului Airport, on the island of Maui, with Cline as the pilot and four passengers, for a scheduled 1 hour and ten minute roundtrip sightseeing flight. (Id.)

At approximately 12:14 p.m., the Subject Helicopter "collided with mountainous terrain near Pukoo, Hawaii, on the island of Molokai." (Id.) Cline and the four passengers were fatally injured. (Id.)

**STANDARD OF REVIEW**

12

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  Id.

13

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut.

14

<u>Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see</u> <u>also</u> <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## <u>ANALYSIS</u>

On November 10, 2011, Nathan Cline was fatally injured when the helicopter he piloted, Eurocopter EC 130 B4 with Serial Number 4909 and Federal Aviation Administration Registration No. N11QV ("Subject Helicopter"), crashed in mountainous terrain on the island of Molokai.

Plaintiff Violeta Escobar, also known as Violeta Escobar Cline, on behalf of herself individually, and on behalf of the Estate of her deceased husband Nathan Cline ("Plaintiff") filed the First Amended Complaint as a result of the accident.

Plaintiff's First Amended Complaint asserts state law tort claims against Defendant Nevada Helicopter Leasing LLC ("Nevada Leasing") which was the owner and lessor of the Subject Helicopter.

Defendant Nevada Leasing asserts that Plaintiff's state law tort claims are preempted by a provision of the Federal Aviation Act entitled "Limitation of Liability," codified at 49 U.S.C. § 44112.

## I.   Preemption

The preemption doctrine is rooted in the Supremacy Clause of the United States Constitution.  U.S. CONST. ART. VI., cl. 2.  Pursuant to the Supremacy Clause, the United States Congress has the power to preempt state law.  Montalvo v. Spirit Airlines, 508 F.3d 464, 470 (9th Cir. 2007).

Federal preemption may be express or implied.  Whistler Invs., Inc. v. Depository Trust & Clearing Corp., 539 F.3d 1159, 1164 (9th Cir. 2008).  Congress' intent may be explicitly stated, or expressed, in the statute's language or implicitly contained in its structure and purpose.  Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992).

### A.   Express Preemption

There is no express preemption in this case.  The Federal Aviation Act has no express preemption clause.  Martin v. Midwest Exp. Holdings, Inc., 555 F.3d 806, 808 (9th Cir. 2009).

Even without an express provision for preemption, state law must yield to federal law if preemption is implied.

**B.   Implied Preemption**

Implied preemption exists in two different circumstances: field preemption and conflict preemption.  <u>Indus. Truck Ass'n, Inc. v. Henry</u>, 125 F.3d 1305, 1309 (9th Cir. 1997).

**1.   Field Preemption**

Field preemption is not at issue in this case.  Field preemption occurs when federal law so thoroughly occupies the legislative field so as to indicate that it was Congress' intent to occupy a given field to the exclusion of state law. <u>Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta</u>, 458 U.S. 141, 153 (1982).   The Ninth Circuit Court of Appeals has found in several instances that the Federal Aviation Act and its regulations do not completely preempt the field to exclude state law claims for injuries relating to air travel.[4]   <u>See</u>

---

[4] In her Opposition to the Motion for Summary Judgment, Plaintiff argues that her causes of action are not subject to field preemption pursuant to <u>Sikkelee v. Precision Airmotive Corp.</u>, 822 F.3d 680, 693 (3d Cir. 2016).  Field preemption is not an issue in this case and <u>Sikkelee</u> does not apply. (Def.'s Reply at p. 10, ECF No. 149).

Gilstrap v. United Air Lines, Inc., 709 F.3d 995, 1004 (9th Cir. 2013); Martin, 555 F.3d at 808.

### 2.   Conflict Preemption

Conflict preemption arises when compliance with both federal and state law is impossible or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the federal law.  Wyeth v. Levine, 555 U.S. 555, 563 (2009); see Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1149, 1152 (9th Cir. 2000).

Conflict preemption exists in this case.  Plaintiff's common law tort causes of action interfere with the intent of Congress in enacting 49 U.S.C. § 44112 of the Federal Aviation Act.

The legislative history of the statute established that the federal law's purpose and objective is to protect financiers, owners, and long-term lessors of aircraft from liability when they were not in actual possession or control of the aircraft.  Cipollone, 505 U.S. at 516.

## II.  The Intent and Purpose of the Limitations of Liability Provision of the Federal Aviation Act, 49 U.S.C. § 44112

The Court must examine the federal statute as a whole and identify its purpose and intended effects when determining if the state law stands as an obstacle to the intent of the federal law. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000).

49 U.S.C. § 44112 is a section of the Federal Aviation Act entitled "Limitation of Liability." 49 U.S.C. § 44112. The statute, codified at, 49 U.S.C. § 44112, provides as follows:

### § 44112. Limitation of liability

(a) **Definitions.**—In this section—

  (1) "lessor" means a person leasing for at least 30 days a civil aircraft, aircraft engine, or propeller.

  (2) "owner" means a person that owns a civil aircraft, aircraft engine, or propeller.

  (3) "secured party" means a person having a security interest in, or security title to, a civil aircraft, aircraft engine, or propeller under a conditional sales contract, equipment trust contract, chattel or corporate mortgage, or similar instrument.

(b) **Liability.**—A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage on land or water only when a civil aircraft, aircraft engine, or propeller is **in the actual possession or control** of the lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of—

19

> (1)   the aircraft, engine, or propeller; or
>
> (2)   the flight of, or an object falling from, the aircraft, engine, or propeller.

49 U.S.C. § 44112 (emphasis added).

The plain language of the "Limitation of Liability" provision of the Federal Aviation Act states that owners and lessors of aircraft cannot be held liable for personal injury, death, and property damages unless the secured party, owner, or lessor was "**in the actual possession or control**" of the aircraft.  49 U.S.C. § 44112(b).

## A.    Legislative History of 49 U.S.C. § 44112

The current statute, 49 U.S.C. § 44112, was first enacted in 1948 as Section 504 of the Civil Aeronautics Act (1948), which stated:

> No person having a security interest in, or security title to, any civil aircraft ..., and no lessor of any such aircraft under a bona fide lease of thirty days or more, shall be liable by reason of such interest or title, or by reason of his interest as lessor or owner of the aircraft so leased, for any injury to or death of persons, or damage to or loss of property, on the surface of the earth (whether on land or water) caused by such aircraft or by the dropping or falling of an object therefrom, unless such aircraft is in the actual possession or control of such person at the time of such injury, death, damage, or loss.
>
> Pub. L. No. 482-656, 62 Stat. 470 (1948).

20

The 1948 House Report for the Bill explained the intention for the law was to facilitate the financing for aircraft purchases in order to allow owners and lessors of aircraft to be shielded from liability when they were not in actual possession or control of the aircraft.  H.R. Rep. No. 80-2091, at 1 (1948), <u>reprinted in</u> 1948 U.S.C.C.A.N. 1836.

The 1948 House Report stated that the federal law was a direct response to the Uniform Aeronautics Act, which was in force in ten states and in Hawaii in 1948.  The Uniform Aeronautics Act had declared that the owner of every aircraft was "absolutely liable" for injuries caused by the flight of the aircraft, regardless of the owner's degree of control of the aircraft.  H.R. Rep. No. 80-2091, at 1 (1948), <u>reprinted in</u> 1948 U.S.C.C.A.N. 1836.

The House Report explained that the new federal law was intended to make it clear that an owner or lessor of an aircraft would not be liable unless it had actual possession or control over the aircraft.  The House Report explained the intent of the Bill as follows:

> Provisions of present Federal and State law might be construed to impose upon persons who are owners of aircraft for security purposes only, or who are lessors of aircraft, liability for damages caused by the operation of such aircraft even though they have no control over the operation of the aircraft.  **This bill would remove this doubt by providing clearly**

**that such persons have no liability under such
circumstances.**

H.R. Rep. No. 80-2091, at 1 (1948), <u>reprinted in</u> 1948
U.S.C.C.A.N. 1836 (emphasis added).

In 1958, the Civil Aeronautics Act was reenacted as the
Federal Aviation Act, which created the Federal Aviation
Agency. Federal Aviation Act of 1958, Pub. L. 85-726, § 504,
72 Stat. 731 (1958); S. Rep. No. 85-1811 (1958); H.R. Rep. No.
85-2556 (1958).  Section 504 of the Civil Aeronautics Act was
unchanged and it was codified as part of the Federal Aviation
Act at 49 U.S.C. § 1404.  Pub. L. 85-726, § 504, 72 Stat. 731
(1958).

The following year Section 504 of the Federal Aviation
Act was modified to add the terms "aircraft engine, or
propeller" to limit the liability for owners and lessors of an
aircraft's engine and propellers in addition to owners of
civil aircraft.  Pub. L. No. 86-81 § 2, 73 Stat. 180; 49
U.S.C. § 1404 (1959).

The Senate Report for the Bill explained that there was
an "extreme shortage of available capital" for aircraft and
aircraft parts and that the purpose of the bill was to
facilitate the financing for aircrafts, as well as aircraft
engines and propellers, by expanding the full protection given
to lessors of the aircrafts.  S. Rep. No. 86-221 (1959); <u>see</u>

22

also H.R. Rep. No. 86-445 (1959); 86 Cong. Rec. S. 1368 (1959).

On March 23, 1959, J. Donald Durand, Assistant General Counsel for the Air Transportation Association testified at a hearing before the United States Senate Subcommittee of the Committee on Interstate and Foreign Commerce regarding the Limitation on Liability provision of the Federal Aviation Act. (See Financing of New Jet and Turboprop Aircraft: Hearing on S. 1368 Before the Subcomm. On Interstate and Foreign Commerce, Mar. 23, 1959, 86th Cong. 1 (1959)).  Durand testified that it was the intention for the Federal Aviation Act's Limitation on Liability provision to preempt state law. (Id. at p. 15).  At the hearing, Senator Morton asked if an injured party could seek relief in state court pursuant to a state law that imposes absolute liability on owners, and Durand testified: "The liability provisions of section 504 apply-they apply whether you are in a State or Federal court. They are the supreme law of the land on this point."  (Id.)

In 1994, the statute was restructured to provide definitions for "lessor", "owner" and "secured party" as part of a revision to Title 49 of the U.S. Code and recodified in its present form as 49 U.S.C. § 44112(b).

23

The definitions provide that financiers, owners, and lessors of aircraft with leases of more than 30 days are shielded from liability when the lessor, owner, or secured party was not in actual possession or control of the aircraft.

**B.    49 U.S.C. § 44112 Preempts Plaintiff's State Law Claims Against the Defendant Nevada Leasing as the Owner/Lessor of the Subject Helicopter**

**1.    Plaintiff's State Law Causes of Action**

Plaintiff's First Amended Complaint alleges strict product liability and negligence causes of action against Defendant Nevada Leasing as a result of the November 10, 2011 crash of the Subject Helicopter.  (First Amended Complaint at ¶¶ 49-77, ECF No. 32).[5]

Plaintiff's state law causes of action are preempted by 49 U.S.C. § 44112 of the Federal Aviation Act.  The United States Supreme Court has explained that a federal law preempts state law based on conflict preemption where "under the circumstances of [a] particular case, [the state law] stands

_____

[5] Plaintiff also asserts a state law claim pursuant to the doctrine of <u>res ipsa loquitur</u>.  (First Amended Complaint at ¶¶ 78-79, ECF No. 32).  The doctrine of <u>res ipsa loquitur</u> is a manner in which negligence and strict liability may be proven, but it is not an independent cause of action.  <u>Windward Aviation, Inc. v. Rolls-Royce Corp.</u>, Civ. No. 10-00542 ACK-BMK, 2011 WL 2670180, *20 (D. Haw. July 6, 2011) (citing <u>Rodriquez v. Gen. Dynamics Armament and Tech. Prods., Inc.</u>, 696 F.Supp.2d 1163, 1182 (D. Haw. 2010)).

24

as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." <u>Hines v. Davidowitz</u>, 312 U.S. 52, 67 (1941).  Plaintiff's claims stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the Limitations on Liability Provision of the Federal Aviation Act, 49 U.S.C. § 44112, that limits liability for financiers, owners, and long-term lessors of aircrafts.

Under Hawaii law, a successful negligence claim must satisfy the following four elements:

(1)  a duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

(2)  a failure on the actor's part to conform to the standard required;

(3)  a reasonably close causal connection between the conduct and the resulting injury; and,

(4)  actual loss or damage resulting to the interests of another.

<u>Ono v. Applegate</u>, 612 P.2d 533, 538-39 (Haw. 1980).

There is a question if Hawaii state law would impose liability on the lessor of an aircraft pursuant to the holding in <u>Stewart v. Budget Rent-a-Car Corp.</u>, 470 P.2d 240 (Haw. 1970).  The holding in <u>Stewart</u> provided that there may be liability on a lessor for harm caused by a defective product

even if the lessor was not in actual possession or control of the product at the time of the accident.  Id. at 243.  The facts of the Stewart case are distinguishable as protections for the financing for aircraft and the nature of the leases for aircraft is not similar to the nature of car rental agencies.  Car rental agencies are generally in charge of the maintenance and care of the vehicles.  The facts of this case establish that Nevada Leasing was not in charge of the maintenance and care of the helicopter, Blue Hawaiian was responsible for such actions.

There is also a question if Hawaii state law would impose liability pursuant to the holding of the Hawaii Supreme Court in Acoba v. Gen. Tire, Inc., 986 P.2d 288, 305 (Haw. 1999).  In Acoba, the Hawaii Supreme Court held an owner or lessor may be liable for negligence as a result of a product that it did not manufacture if the owner or possessor knew or had reason to know that the product was defective or there was a foreseeable risk of harm.   Id.

Imposing liability on a financier, owner, or a lessor of an aircraft in such circumstances would interfere with the objectives and intentions of Congress.  See Crosby, 530 U.S. at 373.  The plain language of the statute establishes that 49 U.S.C. § 44112 was enacted to limit the liability of a secured

party, owner, or lessor of aircraft pursuant to state law.

See Hines, 312 U.S. at 67; Wyeth, 555 U.S. at 563.


**2.    Plaintiff's State Law Causes of Action Interfere with the Full Purpose and Objectives of the Federal Aviation Act's Limitation of Liability Provision, 49 U.S.C. § 44112**

The legislative history of the Limitations on Liability provision in the Federal Aviation Act is clear.  It was intended to preempt state laws that impose liability on the financiers, owners, and lessors of aircraft who were not in actual possession or control of the aircraft.

Interpretation of 49 U.S.C. § 44112(b) can be found in Lu v. Star Marianas Air, Inc., 2015 WL 2265464, *4 (D. N.M.I. May 12, 2015).  In Lu, the court held that federal law preempts common law negligence claims against an aircraft lessor.

Other courts considering the issue have agreed and found conflict preemption applies to preclude a plaintiff from bringing similar state law causes of action.  In In re Lawrence W. Inlow Accident Litigation, an individual was killed when a helicopter rotor blade hit him after he disembarked from the helicopter.  2001 WL 331625, *1 (S.D. Ind. Feb. 7, 2001).  The victim's estate brought negligence

27

claims against the lessor of the helicopter who did not have control of the helicopter. Id. at *2. The federal district court in Indiana found that 49 U.S.C. § 44112 preempted the negligence claims against the lessor of the helicopter. Id. at *14.

The federal district court in In re Lawrence Inlow explained that the plain language of 49 U.S.C. § 44112 along with its legislative history demonstrated that it "was plainly intended, and plainly written, to preempt such state statutes and parallel common law claims" that impose liability on aircraft owners and lessors who were not in actual possession or control of the aircraft. 2001 WL 331625, *14-*15 (S.D. Ind. Feb. 7, 2001).

In Matei v. Cessna Aircraft Co., 1990 WL 43351, *5 (N.D. Ill. Mar. 30, 1990), the federal district court in Illinois held that 49 U.S.C. § 1404, the predecessor to 49 U.S.C. § 44112, preempted conflicting state law and granted summary judgment in favor of an owner/lessor of an aircraft who did not have possession and control of the aircraft pursuant to the terms of its lease. Id. The district court relied, in part, on dicta from the Fifth Circuit Court of Appeals' decision in Rogers v. Ray Gardner Flying Service Inc., 435 F.2d 1389, 1394 (5th Cir. 1970), which stated that 49 U.S.C. §

1404 "appears clearly and forthrightly to preempt any contrary state law which might subject holders of security interests to liability for injuries so incurred."

The Seventh Circuit Court of Appeals affirmed the Illinois district court's decision granting summary judgment in favor of the owner/lessor of the aircraft in <u>Matei v. Cessna Aircraft Co.</u>, 35 F.3d 1142, 1144-45 (7th Cir. 1994). The appeals court did not address the district court's preemption finding, but it ruled on an alternative finding under state law that the owner/lessor of the aircraft could not be held liable for the accident because the lessee had the exclusive possession and control of the aircraft.  <u>Id.</u>

The Superior Court of Connecticut has also found that 49 U.S.C. § 44112 preempts state law.  <u>Mangini v. Cessna Aircraft Co.</u>, 40 Conn. L. Rptr. 470, *5 (Conn. Super. Ct. Dec. 7, 2005).  The Superior Court of Connecticut relied on several federal courts' interpretations of 49 U.S.C. § 44112, explaining that "no federal court had held, as of 2001, that 49 U.S.C. § 44112 or its predecessor failed to preempt contrary state law."  <u>Mangini</u>, 40 Conn. L. Reprt. 470 at *5.

A review of the legislative history of the federal statute along with the decisions in <u>Lu</u>, <u>In re Lawrence Inlow</u>, <u>Rogers</u>, <u>Matei</u>, and <u>Mangini</u> demonstrates that Plaintiff

Escobar's state law causes of action are subject to conflict preemption.

A minority of state law courts have found that conflict preemption may not apply to some state law causes of action. Vreeland v. Ferrer, 71 So.3d 70, 83-84 (Fla. 2011); Storie v. Southfield, 282 N.W.2d 417, 418 (Mich. App. 1979)).  The dissent in Vreeland recognized that the Florida court's decision was the minority view and stated that the Florida court's interpretation of the federal statute "defies reality" and found that the majority's view was inconsistent with the plain meaning of the statute.  Id. at 85-86 (Ploston, J., dissenting).

The minority view expressed in Vreeland is unpersuasive. It is inconsistent with the legislative history of 49 U.S.C. § 44112 and contrary to the holdings of the majority of courts who have considered the issue.

Plaintiff's state law causes of action stand as an obstacle to the purpose and objectives of Congress in the Limitation of Liability provision of the Federal Aviation Act and are preempted.  See Crosby, 530 U.S. at 373.

**III.     The Federal Aviation Act's Limitation of Liability Provision, 49 U.S.C. § 44112, Bars Plaintiff's Claims Against Nevada Helicopter Leasing LLC**

Pursuant to 49 U.S.C. § 44112, Defendant Nevada Leasing cannot be liable for the accident involving the Subject Helicopter on November 10, 2011, unless it was in the "actual possession or control" of the Subject Helicopter at the time the injury was sustained.  49 U.S.C. § 44112; <u>In re Hudson River Mid-Air Collision</u>, 2012 WL 646005, *3 (D.N.J. Feb. 28, 2012); <u>Esheva v. Siberia Airlines</u>, 499 F.Supp.2d 493, 499 n.4 (S.D.N.Y. 2007) (stating that a lessor is "absolutely immune" from liability unless the aircraft was in the actual possession or control of the lessor at the time of the injury).

The Parties agree that Defendant Nevada Leasing was the owner and lessor of the Subject Helicopter.  On March 17, 2010, Defendant Nevada Leasing purchased the Subject Helicopter.  (Invoice from American Eurocopter Corporation to Nevada Leasing dated March 17, 2010, attached as Ex. 4 to Def.'s CSF, ECF No. 128-5).  Defendant Nevada Leasing was the registered owner of the Subject Helicopter.  (Federal Aviation Administration Certification issued on April 16, 2010, for Eurocopter EC130B4 with Registration Number 11QV, attached as Ex. 3 to Def.'s CSF, ECF No. 128-4).

Defendant Nevada Leasing entered into a long-term lease with Blue Hawaiian.  (Master Helicopter Lease Agreement and

Master Lease Schedule, attached as Ex. 5 to Def.'s CSF, ECF
No. 128-6).  The Amended and Restated Master Helicopter Lease
Agreement was in effect at the time of the November 10, 2011
accident.  (Amended and Restated Master Helicopter Lease
Agreement, effective between June 1, 2011 until June 1, 2016,
at p. 14, attached as Ex. 6 to Def.'s CSF, ECF No. 128-7).

Defendant Nevada Leasing was identified in the Lease as
"Lessor" and Blue Hawaiian was identified as the "Lessee."
(Id. at p. 1).

The terms of the Lease between Defendant Nevada Leasing
and Blue Hawaiian provided that Blue Hawaiian would possess
and control the Subject Helicopter at all times following
delivery.

The Lease explained the terms regarding the use,
possession, and control of the Subject Helicopter, as follows:

> 10.  Use of Helicopter. Lessee[6] agrees that the
> Helicopter will be used solely in the
> ordinary conduct of Lessee's business and
> in compliance with any and all statutes,
> laws, ordinances and regulations of any
> governmental agency applicable to the use
> of the Helicopter, and that **the Helicopter
> will at all times be and remain in the
> possession and control of Lessee.** Lessee
> shall permit the Helicopter to be operated

---

[6] The Lease provided that Nevada Leasing was the Lessor
and Blue Hawaiian was the Lessee.  (Amended and Restated
Master Helicopter Lease Agreement, at p. 1, attached as Ex. 6
to Def.'s CSF, ECF No. 128-7)

only by pilots who are employed by Lessee
and who have in effect all current
licenses, certificates and ratings
necessary or appropriate for the operations
of the Helicopter, and who have completed
the training requirements of Lessee's
operations manuals, which shall comply with
all applicable requirements of the FAA and
all other governmental or regulatory
agencies having jurisdiction.

(Amended and Restated Master Helicopter Lease Agreement,

at ¶ 10, attached as Ex. 6 to Def.'s CSF, ECF No. 128-7)

(emphasis added).

The Lease also provided that Blue Hawaiian would be

responsible for the maintenance, repairs, and inspections for

the Subject Helicopter.  (Id. at ¶ 11).  The Amended Lease

Agreement stated:

11.  Maintenance; Repairs; Reports; Inspections.

(a)  Inspection upon Delivery. Lessee shall
     inspect each Helicopter prior to
     delivery by Lessor.  Unless otherwise
     agreed in writing between the Lessor
     and the Lessee at the time of
     delivery, Lessee shall be responsible
     for all repairs and maintenance of the
     Helicopter upon delivery. Lessee's
     failure to inspect a Helicopter upon
     delivery shall constitute a waiver of
     any right Lessee might otherwise
     have to raise an objection concerning the
     condition of the Helicopter upon
     delivery.

(b)  **Lessee shall, at its own cost and
     expense, cause to be performed all
     inspections and required repair and
     maintenance of the Helicopter as may**

33

**be required under any applicable law
or regulations related to aviation or
airworthiness of Helicopter**, ordinary
wear and tear excepted including
without limitation (to the extent
applicable) the requirements of Part
135 of the Federal Aviation
Regulations. Lessee shall further
cause the Helicopter to comply at all
times with all applicable
manufacturers' directives,
airworthiness directives or mandatory
service bulletins.

(Amended and Restated Master Helicopter Lease Agreement,
at ¶ 11(a)-(b), attached as Ex. 6 to Def.'s CSF, ECF No. 128-
7) (emphasis added).

There is no evidence in the record that Defendant Nevada
Leasing had actual possession or control of the Subject
Helicopter following its delivery to Blue Hawaiian on March
29, 2010.

The Director of Maintenance for Blue Hawaiian stated in
his affidavit that after the Subject Helicopter was delivered
to Blue Hawaiian on March 29, 2010, it remained in Blue
Hawaiian's possession and control until the crash on November
10, 2011.  (Affidavit of W. Troy Atkinson, Director of
Maintenance for Blue Hawaiian ("Atkinson Aff.") at ¶ 4-5, ECF
No. 128-8).  There is evidence in the record that Blue
Hawaiian performed maintenance and inspections of the Subject
Helicopter on July 5, 2010, June 30, 2011, July 20, 2011,

34

August 4, 2011, September 14, 2011, October 10, 2011, November 8, 2011.  (See Blue Hawaiian Maintenance and Inspection Records, attached as Exs. A-G to the Atkinson Aff., ECF No. 128-8).

The National Transportation Safety Board conducted a Factual Report regarding the November 10, 2011 accident. (NTSB Factual Report Aviation, NTSB ID: WPR12MA034, attached as Ex. 8 to Def.'s CSF, ECF No. 128-9).  The National Transportation Safety Board's Report determined that the Subject Helicopter was operated on the day of the crash by Blue Hawaiian pursuant to the Federal Aviation Regulations, 14 C.F.R. § 135.  (Id. at p. 1).

49 U.S.C. § 44112 requires that the owner/lessor be in "actual possession or control" of the aircraft in order to be liable.  In re Lawrence Inlow, 2001 WL 331625 at *18.  The district court in In re Lawrence Inlow addressed the term "actual possession or control" and determined that the owner/lessor must be "engaged in some concrete fashion in the operation of the aircraft" in order to be liable.  Id.

Plaintiff has not provided any evidence to demonstrate that Defendant Nevada Leasing had actual possession or control over the Subject Helicopter after its delivery of the Subject Helicopter to Blue Hawaiian on March 29, 2010.  There is no

evidence that Nevada Leasing was engaged in any concrete manner with the actual physical possession or the actual operational control over the Subject Helicopter after its delivery.

Plaintiff looks to the fact that Defendant Nevada Leasing and Blue Hawaiian had the same owners and similar management. Defendant Nevada Leasing and Blue Hawaiian were separate legal entities with separate purposes and responsibilities.

Plaintiff is seeking to have the Court ignore the corporate structures of Nevada Leasing and Blue Hawaiian. Nothing in the record supports ignoring the corporate structure of the two separate entities.

The record indicates that Nevada Leasing had no employees and was established in the State of Nevada for tax incentives. (Woods Aff. at ¶¶ 7, 10, attached as Ex. 1 to Def.'s CSF, ECF No. 128-2; Chevalier Depo. at pp. 49-51, attached as Ex. 5 to Pla.'s CSF, ECF No. 142-7). There is no evidence that Nevada Leasing was engaged in the business of operating, maintaining, inspecting, or flying any aircraft. (See Operating Agreement for Nevada Helicopter Leasing LLC at ¶ 1.6, attached as Ex. 2 to Pla.'s CSF, ECF No. 142-4).

Plaintiff asserts that the Lease afforded Defendant Nevada Leasing the right to control some aspects of the

Subject Helicopter because the Lease required permission from Defendant Nevada Leasing to add accessories to the Subject Helicopter.  (Amended and Restated Master Helicopter Lease Agreement at ¶ 11(c), attached as Ex. 6 to Def.'s CSF, ECF No. 128-7).  Plaintiff also cites to provisions of the Lease that required Blue Hawaiian to abide by the terms of the Lease and to provide Defendant Nevada Leasing with reports and records for the Subject Helicopter.  (Id. at ¶ 11(e), 11(f), 17).

Nothing in these provisions cited by the Plaintiff demonstrates that Defendant Nevada Leasing had "actual possession or control" of the Subject Helicopter.  The provisions cited by Plaintiff demonstrate that Defendant Nevada Leasing maintained its ownership and lessor interest in the Subject Helicopter but did not have actual possession or control of the Subject Helicopter.

Plaintiff further argues that Defendant Nevada Leasing could have chosen to operate the Subject Helicopter because the managers were given the authority to operate company property.  (Operating Agreement for Nevada Helicopter Leasing LLC at ¶ 1.6, attached as Ex. 2 to Pla.'s CSF, ECF No. 142-4).  This argument is not persuasive.  49 U.S.C. § 44112 limits liability unless the owner/lessor was in "actual possession or control" of the aircraft, and it does not include the

37

possibility of future possession or control.  Plaintiff has not pointed to any evidence where the Subject Helicopter was actually controlled or operated by Defendant Nevada Leasing.

Defendant Nevada Leasing has provided evidence that the Subject Helicopter was never in its actual possession or control following March 29, 2010.  Plaintiff has not provided any evidence to the contrary.

Pursuant to 49 U.S.C. § 44112, Defendant Nevada Leasing is immune from liability as the owner/lessor of the Subject Helicopter as it was not in actual possession or control of the aircraft.


## CONCLUSION

Defendant Nevada Helicopter Leasing LLC's Motion for Summary Judgment (ECF No. 127) is **GRANTED**.

Defendant Nevada Helicopter Leasing LLC is **TERMINATED** from the case.


//

//

//

Airbus Helicopters SAS is the only remaining defendant in this case.


IT IS SO ORDERED.

DATED:    July 21, 2016, Honolulu, Hawaii.


Helen Gillmor
United States District Judge


Violeta Escobar, also known as Violeta Escobar Cline, Individually, and as Personal Representative for the Estate of Nathan Cline, Deceased v. Nevada Helicopter Leasing LLC; Airbus Helicopters SAS; Cross-Claimant Nevada Helicopter Leasing LLC v. Cross-Defendant Airbus Helicopters SAS; Third-Party Plaintiff Nevada Helicopter Leasing LLC v. Third-Party Defendant Airbus Helicopters, Inc.; Civ. No. 13-00598HG-RLP; **ORDER GRANTING DEFENDANT NEVADA HELICOPTER LEASING LLC'S MOTION FOR SUMMARY JUDGMENT (ECF No. 127)**