IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VIOLETA ESCOBAR, also known as | ) | Civ. No. 13-00598 HG-WRP |
| VIOLETA ESCOBAR CLINE, | ) | |
| Individually and as Personal | ) | |
| Representative for the ESTATE | ) | |
| OF NATHAN CLINE, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NEVADA HELICOPTER LEASING LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER RULING ON DEFENDANT'S SIX MOTIONS IN LIMINE**

In November 2011, a helicopter piloted by the Plaintiff's husband crashed on the island of Molokai.  Plaintiff filed a complaint against Defendant Nevada Helicopter Leasing LLC, the owner of the Subject Helicopter, and other Defendants, asserting negligence and strict liability claims.

In July 2016, the Federal District Court granted Defendant Nevada Helicopter Leasing LLC's Motion for Summary Judgment.

Plaintiff appealed and in February 2019, the case was remanded.  The Ninth Circuit Court of Appeals found that there were issues of fact as to whether Defendant Nevada Helicopter Leasing LLC had actual possession or actual control of the Subject Helicopter at the time of the crash.

The Court ordered a bifurcated trial.  The first trial is

1

limited to the factual questions identified by the Appellate Court to determine whether Nevada Leasing may be held liable as the lessor of the Subject Helicopter pursuant to 49 U.S.C. § 44112(b).

The second trial is to determine if there is liability by Nevada Helicopter Leasing LLC pursuant to Plaintiff's state law negligence and strict liability claims and if there are any damages owed by Nevada Helicopter Leasing LLC.

Defendant has filed six motions in limine regarding the first trial.

## ANALYSIS

### Defendant's Motion in Limine No. 1: To Preclude Plaintiff From Introducing Evidence Or Arguments Contrary To The Applicable Law (ECF No. 422)

Defendant's Motion in Limine No. 1 seeks to preclude the Plaintiff from arguing that the Federal Aviation Act Regulations governing "operational control" do not apply in this case.

The Court has already held a hearing on the jury instructions where the Parties argued their positions regarding what law applies to determine "operational control." (Minutes from November 14, 2019, ECF No. 413).

The Court has provided the Parties with a set of Proposed Instructions for their review and comment prior to trial. (Id.)

The Court finds, as a matter of law, that the Federal Aviation Regulations provide a definition of "operational

control" which is relevant to the determination of which entity actually exercised operational control of the helicopter when it crashed on November 10, 2011.

The Court will instruct the jury on the definition of "operational control" and the factors that the jury shall consider in determining whether Defendant Nevada Helicopter Leasing LLC had operational control of the helicopter at the time of the accident.

Neither Party may argue a legal theory to the jury that would usurp the Court's exclusive role of instructing the jury on the law.

Both Parties are permitted to introduce expert testimony to support their position regarding which entity "actually exercised control over the aircraft when it crashed." (Ninth Circuit Memorandum at p. 3, ECF No. 358). The Parties may not introduce expert testimony that is contrary to the legal standard for "operational control" set forth by the Court in its jury instructions. Instruction on the law is in the exclusive role of the Court and an expert may not interfere with the Court's legal instructions.

The Parties, and the jury, are bound by the law that the Court instructs them to apply. The Parties may not attempt to nullify the jury's role by arguing that the jury should ignore the law that is set forth by the Court.

Defendant's Motion in Limine No. 1 (ECF No. 422) is **GRANTED**.

**Defendant's Motion in Limine No. 2**: **To Preclude Any Evidence Of "Operational Control" Prior To The Day Of The Helicopter Flight (ECF No. 423)**

Defendant's Motion in Limine No. 2 seeks to prohibit evidence that Nevada Helicopter Leasing LLC had "operational control" prior to November 10, 2011, the day of the accident.

Plaintiff may introduce evidence that Nevada Helicopter Leasing LLC had operational control prior to November 10, 2011. Plaintiff may not argue that the Parties' contract terms provided that, as a matter of law, Nevada Helicopter Leasing LLC actually exercised operational control over the helicopter when it crashed.

### A.    Question Of "Operational Control" Is A Question Of Fact For The Jury In The First Trial

49 U.S.C. § 44112(b) provides that a lessor cannot be liable for personal injury or death on an aircraft it owns unless the lessor "is in the actual possession or operational control" of the flight. The Ninth Circuit Court of Appeals has explained that the statute "provides protection from liability only when the aircraft's lessor possesses neither *actual possession* nor *actual control.*" (Ninth Circuit Memorandum at p. 2, ECF No. 358).

4

For liability to attach to a lessor, the statute requires actual possession or actual operational control of the aircraft by the lessor at the time of the injury-causing accident.  <u>In re Lawrence W. Inlow Acc. Litigation</u>, 2001 WL 331625, at *18 (S.D. Ind. Feb. 7, 2001) (finding that the lessor must be in actual possession or control of the aircraft at the time of the accident).

The Ninth Circuit Court of Appeals in this case has found that the inquiry for trial is whether Defendant Nevada Leasing "**<u>actually exercised control over the aircraft when it crashed</u>**." (Ninth Circuit Memorandum at p. 3, ECF No. 358) (emphasis added).

### B.  The Federal Aviation Administration Defines Operational Control

The Federal Aviation Administration has broad authority to regulate civil aviation.  49 U.S.C. § 44701.  As part of its duty, the FAA has the authority and discretion, granted by Congress, to apply its expertise to establish legal standards and regulations in the civil aviation field.  <u>Assoc. Of Flight Attendants-CWA v. Chao</u>, 493 F.3d 155, 158 (D.C. Cir. 2007). Through the Federal Aviation Act of 1958 and federal regulations, the Federal Aviation Administration is "empowered to regulate nearly every aspect of private and commercial flight."  <u>Flytenow, Inv. V. F.A.A.</u>, 808 F.3d 882, 885 (D.C. Cir. 2015).  The Federal Aviation Administration is charged with promoting the safe flight

of civil aircraft. 49 U.S.C. § 44701. The FAA is required to issue regulations prescribing minimum safety standards, to provide the requirements for issuing air carrier certificates, and to set forth procedures necessary for air craft operations. 49 U.S.C. § 44701(a)-(f).

The Federal Aviation Regulations ("FAR"), in 14 C.F.R. § 1.1 et seq. set forth detailed requirements and legal standards promulgated by the FAA. 14 C.F.R. § 1.1 defines the term "operational control." "Operational control" is defined as follows:

> **Operational control, with respect to a flight, means the <u>exercise</u> of authority over initiating, conducting or terminating a flight.**

14 C.F.R. § 1.1 (emphasis added).

In invoking its authority pursuant to the Federal Aviation Act, the Federal Aviation Administration also issues Advisory Circulars that establish requirements, guidelines, and interpretations of its own laws and regulations. See Safe Extensions, Inc. v. F.A.A., 509 F.3d 593, 595 (D.C. Cir. 2007).

The Court has ruled that the FAA Advisory Circular 91-37B, dated February 10, 2016, is applicable in this case as it clarifies the definition of "operational control" provided in the Federal Aviation Regulations. (Minute Order dated January 8, 2020 Hearing, ECF No. 477).

Plaintiff argues that the Court has inappropriately limited

6

the definition of "operational control."  Plaintiff asserts that the Court has ruled that only a lessor in possession of a certificate authorizing a commercial flight may be liable for having "operational control" pursuant to 49 U.S.C. § 44112(b). Plaintiff's position is an incorrect characterization of the Court's ruling.  The Court has ruled that in order to determine whether an entity actually exercised operational control, the jury must consider the Federal Aviation Administration's definition of "operational control" and the enumerated factors set forth in the Federal Aviation Administration's Advisory Circular 91-37B.

Advisory Circular 91-37B explains that there are a number of factors to consider in determining "operational control" and such information is provided to "clarify who will maintain operational control."  (Exhibit 1007 at p. 4).  The factors include:

1.   Which entity makes the decision to assign crewmembers and aircraft; accept flight requests; and initiate, conduct, and terminate flights?

2.   For which entity do the pilots work as direct employees or agents?

3.   Which entity is maintaining the aircraft and where is it maintained?

4.   Prior to departure, which entity ensures the flight, aircraft, and crew comply with regulations?

5.   Which entity decides when and where maintenance is accomplished, and which entity directly pays for maintenance?

6.   Which entity determines weather and fuel requirements

and which entity directly pays for the fuel?

7.    Which entity directly pays for the airport fees, parking and hangar costs, food service, and/or rental cars?

(Advisory Circular 91-37B, Exhibit 1007 at ¶ 6.3).

The Parties shall present evidence on these factors to allow the jury to determine which entity "actually exercised control over the aircraft when it crashed" as required by the decision of the Ninth Circuit Court of Appeals Memorandum Opinion.  (Ninth Circuit Memorandum at p. 3, ECF No. 358).

## C.    Plaintiff's Proposed Theory Of The Case Is Contrary To The Law

Plaintiff argues that the following four documents establish that Nevada Helicopter Leasing LLC had operational control over the helicopter when it crashed:

(1)    the April 15, 2010 Security Agreement between Nevada Helicopter Leasing LLC and First Hawaiian Bank, ("Security Agreement"), Exhibit 1;

(2)    the March 29, 2010 Acceptance Affidavit of the Helicopter by Nevada Helicopter Leasing LLC, ("Acceptance Affidavit"), Exhibit 2;

(3)    the April 2, 2001 Operating Agreement for Nevada Helicopter Leasing LLC, ("Operating Agreement"), Exhibit 3; and,

(4)    the June 1, 2011 Lease Agreement between Nevada Helicopter Leasing LLC and Blue Hawaiian Helicopters, ("Lease Agreement"), Exhibit 4.

Plaintiff's position ignores that for Nevada Helicopter Leasing LLC to have operational control it must have been both

"actual" control and to have been "exercised" on the flight that crashed. 49 U.S.C. § 44112(b); 14 C.F.R. § 1.1; Ninth Circuit Memorandum, ECF No. 358.

The Limitation on Liability statute, 49 U.S.C. § 44112, requires that the operational control must be "actual," not theoretical.

The Ninth Circuit Court of Appeals Memorandum decision explained that the inquiry for the Limitation of Liability statute is not whether Nevada Helicopter Leasing LLC <u>ever</u> had the authority to exercise control, but rather whether Nevada Helicopter Leasing LLC "**actually exercised** control over the aircraft when it crashed." (Ninth Circuit Memorandum at p. 3, ECF No. 358) (emphasis added).

### 1. Plaintiff's Argument As To The Security Agreement, Exhibit 1

Plaintiff seeks to argue that the Aircraft Security Agreement between Nevada Helicopter Leasing LLC and First Hawaiian Bank, Exhibit 1, establishes that Nevada Helicopter Leasing LLC maintained possession and control of the Subject Helicopter from the date of receipt of the helicopter on March 29, 2010, until the time of the crash on November 10, 2011.

Plaintiff relies on the Security Agreement's "GRANTOR'S RIGHT TO POSSESSION" on page 4 that states as follows:

Until default, Grantor shall have the possession and

> beneficial use of the Collateral and may use it in any
> lawful manner not inconsistent with this Agreement or
> the Related Documents.

(Security Agreement, Exhibit 1 at p. 4).

Plaintiff misinterprets the meaning of the language of the agreement.  Plaintiff may not argue that the Aircraft Security Agreement establishes that Nevada Helicopter Leasing LLC had possession and operational control of the helicopter at the time of the crash.  The purpose of the Aircraft Security Agreement is to set forth the legal relationship between Nevada Helicopter Leasing LLC (as the owner and purchaser of the helicopter) and First Hawaiian Bank (the lender).  The Grantor's Right To Possession provision explains the possessory relationship between Nevada Helicopter Leasing LLC and the lender, First Hawaiian Bank.  It states that First Hawaiian Bank does not possess the helicopter as the lender.  The provision does not address the possession and operational control of the helicopter as between Nevada Helicopter Leasing LLC and Blue Hawaiian Helicopters.  The admission of the document would be misleading and confusing to the jury and is inadmissible pursuant to Fed. R. Evid. 403.  It is not relevant to the questions before the jury as to the actual control of the helicopter between Nevada Helicopter Leasing and Blue Hawaiian Helicopters.  Fed. R. Evid. 401 and 402.

### 2. Plaintiff's Argument As To The Acceptance Affidavit, Exhibit 2

Plaintiff states that it intends to argue that because Troy Atkinson, the Director of Maintenance for Blue Hawaiian Helicopters, inspected the aircraft on March 29, 2010, Nevada Helicopter Leasing LLC "actually exercised operational control at the time of the crash" on November 10, 2011.

Plaintiff offers Exhibit 2, the March 29, 2010, Acceptance Affidavit, in support of this theory. The Acceptance Affidavit was signed by Troy Atkinson who was the Director of Maintenance for Blue Hawaiian Helicopters. The Affidavit indicates that Troy Atkinson accepted the purchased helicopter by Nevada Helicopter Leasing LLC in order to perform an inspection at the time of its delivery on March 29, 2010.

The Acceptance Affidavit at Exhibit 2 is admissible to demonstrate that Troy Atkinson accepted the Subject Helicopter when it was delivered on March 29, 2010 on behalf of Nevada Helicopter Leasing LLC. Plaintiff, however, is precluded from arguing that the acceptance and inspection of the Subject Helicopter by Troy Atkinson on March 29, 2010 demonstrates that Nevada Helicopter Leasing LLC "actually exercised operational control over the aircraft when it crashed." (Ninth Circuit Memorandum at p. 3, ECF No. 358).

Plaintiff is attempting to argue an incorrect legal standard

to the jury.  Plaintiff seeks to argue that the applicable standard is whether Nevada Helicopter Leasing LLC ever had any authority to control the helicopter.  This is the incorrect legal standard and it may not be argued to the jury.  The question is **not** whether there was any sort of authority for Nevada Helicopter Leasing LLC to inspect, maintain, or control the helicopter.  The question also is **not** whether Nevada Helicopter Leasing LLC ever had any authority to control the helicopter.  The question, as set forth by the Ninth Circuit Court of Appeal's February 11, 2019 Memorandum opinion, is whether Nevada Helicopter Leasing LLC "actually exercised control over the aircraft when it crashed." (Ninth Circuit Memorandum at p. 3, ECF No. 358).

It is undisputed that Nevada Helicopter Leasing LLC had no employees of its own.  The fact that an inspection was done on the aircraft more than a year earlier, by a person it contracted to perform such work, does not lead to the legal conclusion that Nevada Helicopter Leasing LLC was in actual operational control of the aircraft at the time of the crash on November 10, 2011.

The factors to be considered in determining whether Nevada Helicopter Leasing LLC actually exercised operational control at the time of the crash are set forth in the Jury Instruction concerning "operational control" which is based on the Federal Aviation Regulations and Paragraph 6.3 of the Advisory Circular 91-37B governing the FAA's definition of "operational control."

The relationship between Nevada Helicopter Leasing LLC, Blue Hawaiian Helicopters, and the owners of both the entities and their employees may be relevant for purposes of evaluating operational control on November 10, 2011, at the time of the crash. The factors set forth in the Jury Instruction determine "operational control." Plaintiff may not disregard the Jury Instruction and attempt to argue a theory contrary to the law set forth by the Court.

### 3. Plaintiff's Argument As To The Leasing Agreement, Exhibit 4, and the Operating Agreement, Exhibit 3

Plaintiff stated that she intends to argue that Nevada Helicopter Leasing LLC had operational control over the Subject Helicopter since it was received on March 29, 2010 based on the Leasing Agreement (Exhibit 4) and the Operating Agreement (Exhibit 3).

Plaintiff argues that the documents demonstrate that both Nevada Helicopter Leasing LLC and Blue Hawaiian Helicopters simultaneously and continuously had possession and operational control of the helicopter since the delivery date.

Plaintiff's theory is contrary to both the plain text and meaning of the statute and the Ninth Circuit Court of Appeal's decision.

Plaintiff points to the default provisions in the June 1, 2011 Amended And Restated Master Lease Agreement that allowed for

Nevada Helicopter Leasing LLC to re-possess the Subject Helicopter if Blue Hawaiian Helicopters was in default of its obligations.  (Lease Agreement at p. 9, Exhibit 4).  Plaintiff also points to provisions that allow Nevada Helicopter Leasing LLC to request maintenance and inspection records at its discretion.  (Lease Agreement at pp. 5-6, Exhibit 4).

Plaintiff also refers to the Operating Agreement for Nevada Helicopter Leasing LLC that sets forth which individual members had control over the company. (Exhibit 3).

Plaintiff argues that the Lease Agreement (Exhibit 4) and Operating Agreement (Exhibit 3) establish that Nevada Helicopter Leasing LLC had the authority to cancel a flight at any time. This is contrary to the text of these agreements.  The provisions cited by Plaintiff refer to Nevada Helicopter Leasing LLC's ability to request inspection and maintenance documents and their ability to re-possess the helicopter if there was a default by Blue Hawaiian Helicopters.

Plaintiff has not put forward any evidence to show that Blue Hawaiian Helicopters was in default of its obligations at the time of the crash on November 10, 2011.  There is also no proffer of evidence that Nevada Helicopter Leasing took any step to actually possess or did actually exercise operational control of the helicopter at the time of the crash on November 10, 2011.

Plaintiff's theory appears to be based on the deposition

testimony of David Chevalier, rather than the text of the Lease Agreement (Exhibit 4) or the Operating Agreement (Exhibit 3).

As a general rule, the construction and legal effect to be given a contract is a question of law to be resolved by the Court. Koga Eng'g & Constr., Inc. v. State, 222 P.3d 979, 991 (Haw. 2010). Terms of a contract should be interpreted according to their plan, ordinary, and accepted use in common speech, unless the contract indicates a different meaning. Found. Int'l, Inc. v. E.T. Ige Constr., Inc., 78 P.3d 23, 31 (Haw. 2003). Intent of the contract is a question of fact only where the language of the contract is ambiguous and casts a doubt as to the intent of the parties. Soukop v. Snyder, 709 P.2d 109, 112 (Haw. 1985). A term of a contract is ambiguous when it is capable of being reasonably understood in more ways than one. Stewart v. Brennane, 748 P.2d 816, 821 (Haw. App. 1988).

The plain and ordinary language contained in the April 2, 2001 Operating Agreement (Exhibit 3) and the June 1, 2011 Lease Agreement between Nevada Helicopter Leasing LLC and Blue Hawaiian Helicopters (Exhibit 4) does not support Plaintiff's theory of the case. The Court looks no further than the four corners of the document to determine whether an ambiguity exists. State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 978 P.2d 753, 762 (Haw. 1999).

As a matter of law, the Lease Agreement (Exhibit 4) and

Operating Agreement (Exhibit 3) do not establish that Nevada Helicopter Leasing LLC had actual possession or actually exercised operational control of the aircraft at the time of the crash, pursuant to 49 U.S.C. § 44112(b). Plaintiff's disagreement as to the meaning of the contracts or their terms does not render clear language ambiguous. State Farm Fire & Cas. Co., 978 P.2d at 762; Wittig v. Allianz, A.G., 145 P.3d 738, 744-45 (Haw. App. 2006).

Plaintiff may attempt to provide another basis for the admissibility of the Lease Agreement (Exhibit 4) and the Operating Agreement (Exhibit 3) but may not argue a theory of the case that is contrary to the law.

Defendant's Motion in Limine No. 2 (ECF No. 422) is **GRANTED, IN PART, AND DENIED, IN PART.**

**Defendant's Motion in Limine No. 3: To Preclude Any Evidence, Testimony, Or Reference To Agency (ECF No. 424)**

Defendant's Motion in Limine No. 3 seeks to prohibit Plaintiff from arguing that agency principles apply in this case.

Agency law principles must be considered in this case. The Ninth Circuit Court of Appeals stated that the factual inquiry for this case requires a determination of the following:

> [W]hether or not David Chevalier—an owner of both
> Nevada Leasing and the lessee company, Helicopter
> Consultants of Maui, Inc., doing business as Blue
> Hawaiian Helicopters ("Blue Hawaiian")—and Blue
> Hawaiian employees were acting as agents of Nevada

16

Leasing and actually exercised control over the
aircraft when it crashed.

(Ninth Circuit Memorandum at p. 3, ECF No. 358).

The jury will be instructed on agency law in order for the
jurors to assess the agency question put forward by the Ninth
Circuit Court of Appeals.

Defendant's Motion in Limine No. 2 (ECF No. 424) is **DENIED**.

**<u>Defendant's Motion in Limine No. 4</u>: To Preclude Any Reference To
Wrongful Death, The Deceased, Injuries Or Damages Resulting From
The Crash (ECF No. 425)**

Defendant's Motion in Limine No. 4 seeks to limit the
Plaintiff from referencing wrongful death, Plaintiff's deceased
husband, Nathan Cline, or any other injuries or damages resulting
from the Subject Helicopter crash.

The cause of the crash is irrelevant for the first phase of
the trial. Plaintiff may not attempt to introduce its theory of
the case as to the reason for the crash at the first phase of the
trial. As set forth in the Order Granting Defendant's Motion for
Bifurcation, the issue of "actual control" of the helicopter is
potentially dispositive of the case. Bifurcation was ordered
because it simplifies and expedites issues for the jury and
potentially conserves resources by allowing the parties to
litigate the issue of control separate from liability. The first
trial does not involve Plaintiff's theories as to negligence or
strict liability. These issues may not be raised before the jury

17

in the first trial.  Plaintiff is precluded from introducing evidence as to why she believes Nevada Helicopter Leasing LLC should have exercised control over the helicopter at the time of the crash.  The question is not "should" Nevada Helicopter Leasing LLC have exercised control, but rather the question is whether Nevada Helicopter Leasing **"actually exercised control over the aircraft when it crashed."**  (Ninth Circuit Memorandum Opinion at p. 3, ECF No. 358) (emphasis added).

Plaintiff's theories as to why the helicopter crashed, evidence of the resulting wreckage, and any injuries sustained to passengers are irrelevant for the first phase of trial.

The status of the Plaintiff as the personal representative of the Estate of Nathan Cline is relevant.  The legal relationship between Nathan Cline, Blue Hawaiian Helicopters, and Nevada Helicopter Leasing LLC is also relevant for the first phase of trial.

Defendant's Motion in Limine No. 4 (ECF No. 425) is **GRANTED, IN PART, AND DENIED, IN PART.**

Plaintiff is not precluded from stating that Plaintiff's husband was the pilot of the Subject Helicopter and that he died as a result of the crash on November 10, 2011.

Plaintiff is precluded from introducing any theories as to the cause of the crash and any theories as to why she believes Nevada Helicopter Leasing LLC should have exercised control over

the helicopter.  This case was bifurcated for efficiency and conservation of resources and Plaintiff may not attempt to violate the Court's bifurcation order by raising issues outside of the scope of the control issue that is designated for the first phase of trial.  Issues relating to liability, negligence, and strict liability are reserved for the second phase of trial.

Plaintiff is precluded from introducing evidence of any wreckage and from introducing any evidence of injuries to any of the passengers.  Plaintiff is precluded from making any reference to the other passengers in the aircraft on November 10, 2011, or making any statements regarding the purported cause of the crash.

**Defendant's Motion in Limine No. 5: To Preclude Any Reference To A "Judicial Admission" By David Chevalier (ECF No. 426)**

Defendant's Motion in Limine No. 5 seeks to prohibit Plaintiff from arguing that the deposition testimony of David Chevalier constitutes a judicial admission.

The Court has already ruled on this issue in its November 14, 2019 Minute Order (ECF No. 413), citing <u>Snapp v. United Transp. Union</u>, 889 F.3d 1088, 1103-04 (9th Cir. 2018) and will not revisit it.

Plaintiff's counsel is precluded from using the term "judicial admission" or "evidentiary admission."  Such terms are inapplicable here, confusing, and could mislead the jury.  Fed. R. Evid. 403.

Defendant's Motion in Limine No. 5 (ECF No. 426) is **GRANTED**.

**Defendant's Motion in Limine No. 6: To Preclude Any Reference To A Second Trial Or This Proceeding As Bifurcated (ECF No. 427)**

Defendant's Motion in Limine No. 6 seeks to preclude reference to the proceedings as bifurcated or the possibility of a second trial.

There is no need to explain the procedural posture of this case to the jury. The first trial is limited to the factual issue identified by the Ninth Circuit Court of Appeals. Putting the concept of bifurcation before the jury would potentially confuse or mislead the jurors. Fed. R. Civ. P. 403.

The Parties are precluded from referencing bifurcation, explaining any consequences of the jury's verdict, or explaining the procedural posture of the case to the jury.

Defendant's Motion in Limine No. 6 (ECF No. 427) is **GRANTED**.

## CONCLUSION

**Defendant's Motion in Limine No. 1**: To Preclude Plaintiff From Introducing Evidence Or Arguments Contrary To The Applicable Law (ECF No. 422) is **GRANTED**.

**Defendant's Motion in Limine No. 2**: To Preclude Any Evidence Of "Operational Control" Prior To The Day Of The Helicopter Flight (ECF No. 423) is **GRANTED, IN PART, AND DENIED, IN PART.**

**Defendant's Motion in Limine No. 3**: To Preclude Any Evidence, Testimony, Or Reference To Agency (ECF No. 424) is **DENIED**.

**Defendant's Motion in Limine No. 4**: To Preclude Any Reference To Wrongful Death, The Deceased, Injuries Or Damages Resulting From The Crash (ECF No. 425) is **GRANTED, IN PART, AND DENIED, IN PART.**

**Defendant's Motion in Limine No. 5**: To Preclude Any Reference To A "Judicial Admission" or "Evidentiary Admission" By David Chevalier (ECF No. 426) is **GRANTED.**

 **Defendant's Motion in Limine No. 6**: To Preclude Any Reference To A Second Trial Or This Proceedings As Bifurcated (ECF No. 427) is **GRANTED.**

IT IS SO ORDERED.

Dated: March 6, 2020, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Violeta Escobar, also known as Violeta Escobar Cline, Individually, and as Personal Representative for the Estate of Nathan Cline, Deceased v. Nevada Helicopter Leasing, LLC, Civil No. 13-00598 HG-WRP; **ORDER RULING ON DEFENDANT'S SIX MOTIONS IN LIMINE**